IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

R.P.-K., by and through his     )     CIVIL 10-00644 LEK-KSC
mother C.K.,                    )
                                )
          Plaintiff,            )
                                )
     vs.                        )
                                )
DEPARTMENT OF EDUCATION,        )
State of Hawai`i,               )
                                )
          Defendant.            )
_____ )

**ORDER AFFIRMING IN PART AND REVERSING AND REMANDING
IN PART THE HEARINGS OFFICER'S OCTOBER 26, 2010 ORDER**

          Before the Court is an appeal by Plaintiffs R.P.-K.,[1]

by and through his mother C.K. (collectively, "Plaintiffs"), of

the administrative hearings officer's ("Hearings Officer") Order

Granting Respondent's Motion to Dismiss and Denying Petitioners'

Motion for Summary Judgment ("Administrative Dismissal Order"),[2]

filed on October 26, 2010.  Plaintiffs filed their Opening Brief

on April 15, 2011.  Defendant Department of Education, State of

Hawai`i ("Defendant") filed its Answering Brief on May 31, 2011,

and Plaintiffs filed their Reply Brief on June 8, 2011.  The

Court heard oral argument in this matter on July 11, 2011.

John Dellera, Esq., appeared on behalf of Plaintiffs, and

_____

          [1] R.P.-K. is also referred to in the Administrative Record
on Appeal ("Record on Appeal" or "ROA") as "Student".

          [2] The Administrative Dismissal Order can be found in the ROA
at 214-20, [dkt. no. 17-12,] and as Exhibit A to the Complaint
[dkt. no. 1-1].

Berton Kato, Esq., appeared on behalf of Defendant. After
careful consideration of parties' briefs, the arguments of
counsel, and the relevant legal authority, the Court HEREBY
AFFIRMS IN PART AND REVERSES IN PART the Administrative Dismissal
Order insofar as the Court AFFIRMS, although on different
grounds, the Hearings Officer's conclusion that he did not have
subject matter jurisdiction over Plaintiffs' challenge to Act 163
of the Session Laws of Hawai`i for 2010 ("Act 163"), and the
Court REVERSES the Hearings Officer's conclusion that he lacked
jurisdiction over the remainder of the case.

## BACKGROUND

Plaintiffs filed their Complaint for Declaratory and
Injunctive Relief ("Complaint") on November 5, 2010 pursuant to
the Individuals with Disabilities Education Act of 2004 ("IDEA"),
20 U.S.C. § 1400 et seq. Plaintiffs appeal from the Hearings
Officer's Administrative Dismissal Order dismissing Plaintiffs'
Request for Impartial Due Process Hearing ("RIH")[3] based on his
finding that the Office of Administrative Hearings ("OAH") did
not have jurisdiction over the issues raised in the RIH. The
Hearings Officer found, moreover, that R.P.-K. was no longer
entitled to special education and related services, as provided
for in the IDEA, beyond the 2009-2010 school year because his age
disqualified him from receiving said benefits and services under

---

[3] The RIH can be found at ROA 3-5. [Dkt. no. 17-3.]

Hawai`i law.  Defendants filed their answer to the Complaint on

November 24, 2010.  [Dkt. no. 10.]

I.  **Factual History**

R.P.-K. is a twenty-one-year-old male diagnosed with

autism.[4]  [Admin. Dismissal Order at 2; Declaration of C.K. in

Support of Motion for Summary Judgment ("C.K. Decl.")[5] at ¶ 2.]

The 2009-2010 school year was R.P.-K.'s fifth year at Castle High

School ("Castle"), [Individualized Education Program ("IEP")

dated 4/28/10 ("4/28/10 IEP")[6], at 1-2,] and Defendant has

provided him with special education and related services

throughout his attendance at Castle, [C.K. Decl. at ¶ 3].

Defendant terminated his special education and related services

on July 31, 2010.[7]  [Admin. Dismissal Order at 3.]

---

[4] R.P.-K. will turn twenty-two in October 2011.  [Admin.
Dismissal Order at 2.]

[5] The C.K. Declaration, [ROA at 32-34,] is attached to
Plaintiffs' Motion for Summary Judgment, filed on
September 30, 2010 during the administrative phase of this case
("Administrative Motion for Summary Judgment").  The
Administrative Motion for Summary Judgment and its supporting
memorandum can be found in the ROA at 22-31.  [Dkt. no. 17-8.]

[6] The 4/28/10 IEP is attached to the Administrative Motion
for Summary Judgment as Exhibit 3 to the C.K. Declaration.  [ROA
at 44-61.]

[7] The parties' briefs do not clearly indicate whether
R.P.-K. attended Castle High School for the 2010-2011 school
year.  Plaintiffs, however, requested stay put in their RIH.
[RIH at 2.]  The IDEA's "stay put provision" provides that,
"during the pendency of any proceedings conducted pursuant to
this section, unless the State or local educational agency and
(continued...)

R.P.-K.'s IEP team met on April 28, 2010 and
May 13, 2010. At both meetings, C.K. asked the IEP team to allow
R.P.-K. to continue his education and to assign him special
education and related services at Castle beyond the 2009-2010
school year. According to C.K., at both meetings, the IEP team
refused to make a decision regarding her requests and decided to
continue the meeting to another date to collect more information.
[C.K. Decl. at ¶¶ 4-5.]

R.P.-K.'s IEP team met on July 26, 2010. At that
meeting, the IEP team informed C.K. that Castle High School would
not provide educational services for R.P.-K. beyond the 2009-2010
school year on the ground that he reached twenty years of age
prior to the first day of the 2010-2011 school year. [C.K. Decl.
at ¶ 6.] Defendant subsequently confirmed this position in
writing. [Prior Written Notice ("PWN") dated 8/6/10 ("8/6/10
PWN") at 1.[8]] The 8/6/10 PWN states, in pertinent part:

    1.  Description of proposed or refused action:

        On July 31, 2010, [R.P.-K.] will no longer be

_____

[7](...continued)
the parents otherwise agree, the child shall remain in the
then-current educational placement of the child . . . until all
such proceedings have been completed." 20 U.S.C. § 1415(j). At
the oral argument, Plaintiffs' counsel confirmed that stay put
was in place.

    [8] The 8/6/10 PWN, [ROA at 63,] is attached to Plaintiffs'
Administrative Motion for Summary Judgment as Exhibit 4 to the
Declaration of Roy M. Benavidez in Support of Motion for Summary
Judgment ("Benavidez Declaration").

eligible for special education services and
related services under the [IDEA].

2. Explanation of why the action is proposed or
refused:

[R.P.-K.] has acquired the necessary skills
to transition to an adult day program and to
work in a supported employment setting. In
accordance with ACT 163 signed by the
governor June 3, 2010, [R.P.-K.] is no longer
eligible to attend public school. He is 20
years and 10 months old.

[Id.]

## II. **Procedural History**

### A. **Administrative Proceedings**

On June 29, 2010, Plaintiffs submitted their RIH to Lea
E. Albert, Superintendent for the Castle-Kahuku Complex Area.
[ROA at 2 (letter transmitting RIH) (dkt. no. 17-3).] In their
RIH, Plaintiffs alleged that Defendant denied R.P.-K. a free and
appropriate public education ("FAPE") in violation of the IDEA by
refusing to continue providing R.P.-K. with special education and
related services until his twenty-second birthday. [Id. at 2.]
Plaintiffs requested, *inter alia*, "[s]tay put during the pendency
of the instant proceeding" and "[c]ontinued provision of Special
Education and related services until [R.P.-K.'s] 22nd
birthday[.]" [Id.]

On September 30, 2010, Defendant filed its Motion to
Dismiss or in the Alternative for Summary Judgment

("Administrative Motion to Dismiss").[9]  Defendant first argued

that the Hearings Officer lacked subject matter jurisdiction over

the RIH because, under Haw. Admin. R. § 8-60-61(a)(1), Plaintiffs

"'may file a due process complaint on any of the matters

described in [Haw. Admin. R. §] 8-60-58(a)(1) and (2) (relating

to the identification, evaluation or educational placement of a

student with a disability, or the provision of a FAPE to the

student).'"  [Mem. in Supp. of Admin. Motion to Dismiss at 6

(quoting Haw. Admin. R. § 8-60-61(a)(1)).]  Defendant argued that

the RIH did not meet any of these criteria because R.P.-K.'s

4/28/10 IEP and May 13, 2010 IEP ("5/13/10 IEP"), and his

May 11, 2010 and May 21, 2010 PWNs ("5/11/10 PWN" and "5/21/10

PWN", respectively),[10] contained no decision regarding R.P.-K.'s

education beyond the 2009-2010 school year.  Second, Defendant

argued that, in accordance with 20 U.S.C. § 1412(a)(1)(B) and

Act 163,[11] it is not required to provide special education and

_____

[9] The Administrative Motion to Dismiss, and its memorandum
in support, and other supporting documents can be found in the
ROA at 145-209.  [Dkt. no. 17-10.]

[10] The 5/11/10 PWN and the 5/21/10 PWN, [ROA 38-39, 41-42,]
are attached to Plaintiffs' Administrative Motion for Summary
Judgment as Exhibit 1 and Exhibit 2 to the C.K. Declaration.
Neither party has included the 5/13/10 IEP in the ROA.

[11] On June 3, 2010, then-Governor Linda Lingle signed
Act 163 into law.  Act 163 amended Hawai`i Revised Statutes
§ 302A-1134 by limiting admission to public high schools to
students under twenty on the first day of instruction.  Hawai`i
Revised Statutes § 302A-1134(c) provides:

(continued...)

related services to students through their twenty-second birthdays.

Also on September 30, 2010, Plaintiffs filed their Administrative Motion for Summary Judgment. Plaintiffs argued that R.P.-K. is entitled to continued special education and related services until the age of twenty-two because 20 U.S.C. § 1412(a)(1)(A) of the IDEA requires that states make FAPE available to disabled students between the ages of three and twenty-one, inclusive, in order to be eligible for federal funds. Plaintiffs acknowledge that states are exempt from making FAPE available to students from ages eighteen to twenty-two if "'its application to those children would be inconsistent with state law or practice, or the order of any court, respecting the provision of public education to children in those age

_____

[11](...continued)

> No person who is twenty years of age or over on the first instructional day of the school year shall be eligible to attend a public school. If a person reaches twenty years of age after the first instructional day of the school year, the person shall be eligible to attend public school for the full school year.

This provision took effect on July 1, 2010. 2010 Haw. Sess. Laws Act 163, § 3 at 377. Students who are not eligible to attend public school because of their age have the option of pursuing secondary education equivalents in Defendant's adult education programs. [Mem. in Supp. of Admin. Motion for Summary Judgment at 5-6.] At the oral argument, Defendant's counsel represented that Defendant operates the adult education programs as fee-based programs and therefore the entitlement to FAPE does not apply.

ranges. . . .'" [Mem. in Supp. of Admin. Motion for Summary Judgment at 4 (quoting 20 U.S.C. § 1412(a)(1)(B)(i)) (alteration in original).] Plaintiffs contended that Act 163 was not effective to invoke that exemption because students in that age range who have disabilities were being denied the public education that students in that age range who did not have disabilities could receive in Defendant's adult education programs. Plaintiffs also argued that Defendant should be estopped from terminating special education and related services for disabled students who attain the age of twenty because Defendant received federal funds in part due to its representations that it would make a FAPE available to all students between the ages of three and twenty-one, inclusive.

Plaintiffs filed a memorandum in opposition to Defendant's Administrative Motion to Dismiss on October 7, 2010 contending that: (1) the OAH has subject matter jurisdiction to hear their case because it concerns the provision of FAPE; and (2) their Administrative Motion for Summary Judgment addressed the remainder of Defendant's arguments. [ROA at 210-13 (dkt. no. 17-11).] Defendant apparently did not file a memorandum in opposition to Plaintiffs' Administrative Motion for Summary Judgment.

Following a consolidated hearing on the motions on October 14, 2010, the Hearings Officer issued his Administrative

Dismissal Order.  In granting Defendant's Administrative Motion

to Dismiss, the Hearings Officer found that

> the Hearings Officer does not have jurisdiction
> over the April 28, 2010 and May 13, 2010 IEPs, and
> the May 11, 2010 and May 21, 2010 PWNs, as
> [Plaintiffs] are not contesting the
> identification, evaluation, or educational
> placement of a student with a disability, or the
> provision of a FAPE to the student.  Further,
> under 20 U.S.C. Section 1412(a)(1)(B), and Act
> 163, [Defendant] was not obligated to provide
> Student further special education and related
> services beyond the 2009-2010 school year as
> Student had reached 20 years of age on the first
> instructional day of the 2010-2011 school year.

[Admin. Dismissal Order at 6.]

The Hearings Officer also denied Plaintiffs'

Administrative Motion for Summary Judgment, finding that R.P.-K.

"is not entitled to continued special education and related

services until age 22; and [Plaintiffs] have not shown that

[Defendant] should be estopped from cutting off special education

and related services at age 20."  [Id. at 7.]

## B.    **District Court Proceedings**

On March 28, 2011, the plaintiffs in the class action

R.P.-K. ex rel. C.K. v. Department of Education, Civ. No.

10-00436 DAE-KSC ("Class Action"),[12] filed their "Motion (1) to

Transfer and Consolidate Cases and (2) to Modify Rule 16

Scheduling Orders" ("Motion to Consolidate").  They sought to

---

[12] R.P.-K. and C.K. are among the named plaintiffs in the
Class Action.

consolidate the instant case with the Class Action and another

IDEA appeal, <u>R.T.D., ex rel. R.D., et al. v. Department of</u>

<u>Education, Hawaii</u>, CV 10-00641 LEK-RLP. [Class Action, (dkt. no.

32).[13]] On May 9, 2011, United States Magistrate Judge

Kevin S. Chang issued an order granting in part and denying in

part the Motion to Consolidate. Specifically, Magistrate Judge

Chang denied the request to consolidate and granted modification

of the scheduling order. [Class Action, (dkt. no. 40).]

On May 26, 2011, Plaintiffs filed their Motion for Stay

of Proceedings ("Motion to Stay") requesting a stay of the

instant case during the pendency of the Class Action. [Dkt. no.

23.] During a hearing on June 23, 2011, Magistrate Judge Chang

orally denied the Motion to Stay. [Dkt. no. 29.] He

subsequently issued a written order denying the motion. [Order

Denying Pltf.'s Motion for Stay of Proceedings, filed 7/5/11

(dkt. no. 30).]

In their briefs on the merits of the instant appeal,

Plaintiffs argue that the OAH had subject matter jurisdiction

over their RIH. Plaintiffs contend that the RIH raises the issue

of "whether [R.P.-K.] is entitled to FAPE after age 20 based upon

20 U.S.C. § 1412(a)(1)(A)[.]" [Reply Br. at 1.] Plaintiffs

argue that, because "this case involves [R.P.-K.'s] eligibility

---

[13] Plaintiffs filed a copy of the Motion to Consolidate in
the record of the instant case on March 28, 2011. [Dkt. no. 19.]

for FAPE, which is clearly a 'matter relating to the . . .
provision of a free appropriate public education' for which
[R.P.-K.] is entitled to file a due process complaint." [Id. at
2 (alteration in original) (quoting 20 U.S.C. § 1415(b)(6)(A)).]
Plaintiffs also contend that the Hearings Officer had subject
matter jurisdiction over the case because Defendant denied
Plaintiffs' request for FAPE in the 8/6/10 PWN. [Id. (citation
omitted).] Further, Plaintiffs also argue that Act 163 violates
the IDEA and discriminates against students with disabilities
because, although students ages twenty and twenty-one with
disabilities may apply to adult education programs, Defendant has
denied them meaningful access to those programs because it does
not provide special education and related services in those
programs. Finally, Plaintiffs contend that, under either
judicial estoppel or estoppel by contract, Defendant is estopped
from denying its obligation to provide a FAPE to students through
age twenty-one because Defendant represented in its funding
applications to the United States Department of Education that it
made a FAPE available to disabled children between the ages of
three and twenty-one, inclusive.

        Defendant argues that the Hearings Officer properly
dismissed Plaintiff's RIH because he did not have subject matter
jurisdiction over the issues raised in the RIH. Defendant
contends that the RIH did not meet any of the criteria for which

                              11

a due process complaint may be filed pursuant to Haw. Admin. R.
§ 8-60-58(a)(1) and (2) and § 8-60-61(a)(1), *i.e.* the
identification, evaluation or educational placement of a student
with a disability, or the provision of a FAPE to the student.[14]
See also 20 U.S.C. § 1415(b)(6)(A).  Defendant also emphasizes
that Act 163 applies to all students, without exception for any
class of students, and that all adults ages eighteen and older
can participate in its adult education programs.  Defendant
argues that Plaintiffs cannot bring a discrimination claim, under
either the IDEA or Section 504 of the Rehabilitation Act of 1973,
alleging exclusion from adult education programs.  Finally,
Defendant contends that it is not estopped from asserting that

---

[14] Haw. Admin. R. § 8-60-58(a) provides, in pertinent part:

> Written notice that meets the requirements of
> subsection (b) shall be given to the parents of a
> student with a disability a reasonable time before
> the department:
>
> > (1) Proposes to initiate or change the
> > identification, evaluation, or educational
> > placement of the student or the provision of
> > a FAPE to the student; or
> >
> > (2) Refuses to initiate or change the
> > identification, evaluation, or educational
> > placement of the student or the provision of
> > a FAPE to the student.

In addition, § 8-60-61(a)(1) provides: "A parent or the
department may file a due process complaint on any of the matters
described in sections 8-60-58(a)(1) and (2) (relating to the
identification, evaluation or educational placement of §8-60-61
a student with a disability, or the provision of a FAPE to the
student)."

R.P.-K. is no longer eligible for special education and related services under the IDEA because of his age.

**I.    IDEA Overview**

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs."  <u>Hoeft ex rel. Hoeft v. Tuscon Unified Sch. Dist.</u>, 967 F.2d 1298, 1300 (9th Cir. 1992) (citation omitted).  It ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).

The IDEA defines FAPE as

> special education and related services that –
> (A) have been provided at public expense,
> under public supervision and direction, and
> without charge;
> (B) meet the standards of the State
> educational agency;
> (C) include an appropriate preschool,
> elementary school, or secondary school
> education in the State involved; and
> (D) are provided in conformity with the
> individualized education program required
> under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must

evaluate a student, determine whether that student is eligible for special education, and formulate and implement an IEP. See generally 20 U.S.C. § 1414. The IEP is to be developed by an "IEP Team" composed of, *inter alia*, school officials, parents, teachers and other persons knowledgeable about the child. § 1414(d)(1)(B).

Compliance with the IDEA does not require school districts to provide the "absolutely best" or "potential-maximizing" education. J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted). Rather, school districts are required to provide only a "'basic floor of opportunity.'" Id. (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 201 (1982)). The FAPE need only be "appropriately designed and implemented so as to convey [the] [s]tudent with a meaningful benefit." Id. at 433 (citations and quotation marks omitted).

If a parent disagrees with the contents of an IEP, the parent may challenge the contents thereof by demanding an administrative due process hearing to be conducted by the local or state educational agency. See 20 U.S.C. § 1415(b)(6), (F)(1)(A).

14

## II.  **Standard of Review for IDEA Cases**

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the court –
>> (i) shall receive the records of the administrative proceedings;
>> (ii) shall hear additional evidence at the request of a party; and
>> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings.  L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 908 (9th Cir. 2009) (citations omitted).  The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling.  J.W., 626 F.3d at 438 (citing Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'"  L.M., 556 F.3d at 908 (quoting Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995)).  The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his

sensitivity to the complexity of the issues presented." <u>Cnty. of San Diego v. Cal. Special Educ. Hearing Office</u>, 93 F.3d 1458, 1466-67 (9th Cir. 1996) (citation and quotation marks omitted)). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." <u>Wartenberg</u>, 59 F.3d at 891. "[T]he ultimate determination of whether an IEP was appropriate," however, "is reviewed <u>de</u> <u>novo</u>." <u>A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.</u>, 627 F.3d 773, 778 (9th Cir. 2010) (citing <u>Wartenberg</u>, 59 F.3d at 891).

A court's inquiry in reviewing IDEA administrative decisions is twofold:

> "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" [<u>Rowley</u>, 458 U.S. at 206-07] (footnotes omitted). "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." <u>Id.</u> at 207.

<u>J.L. v. Mercer Island Sch. Dist.</u>, 592 F.3d 938, 947 (9th Cir. 2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling. <u>Hood v. Encinitas Union Sch. Dist.</u>, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must show, by a preponderance of the evidence, that the hearing decision should

16

be reversed.  J.W., 626 F.3d at 438 (citation omitted).

## DISCUSSION

The threshold issue on appeal is whether the Hearings

Officer correctly determined that he did not have jurisdiction

over the issues raised in Plaintiffs' RIH.  The Hearings Officer

concluded that he

> does not have jurisdiction over the April 28, 2010
> and May 13, 2010 IEPs, and the May 11, 2010 and
> May 21, 2010 PWNs, as [Plaintiffs] are not
> contesting the identification, evaluation, or
> educational placement of a student with a
> disability, or the provision of a FAPE to the
> student.

[Admin. Dismissal Order at 6.]  As further explained by the

Hearings Officer:

> Under [Haw. Admin. R.] Section 8-60-61(a)(1)
> [Plaintiffs] may file a due process complaint
> relating to the identification, evaluation, or
> educational placement of a student with a
> disability, or the provision of a FAPE to the
> student.  As [Defendant] argues, the [RIH] does
> not meet any of the criteria for which a due
> process complaint may be filed.  In regards to the
> April 28, 2010 and May 13, 2010 IEPs, and the May
> 11, 2010 and May 21, 2010 PWNs (which are the
> basis of the [RIH]) the Hearings Officer agrees
> that the Hearings Officer does not have
> jurisdiction in this matter.  [Plaintiffs] are not
> contesting the identification, evaluation, or
> educational placement of a student with a
> disability, or the provision of a FAPE to the
> student.  [C.K.'s] declaration confirms that the
> IEP team did not make a decision regarding
> extending [R.P.-K.'s] education beyond the 2009-
> 2010 school year at the April 28, 2010 and May 13,
> 2010 IEP meetings.  The May 11, 2010 and May 21,
> 2010 PWNs are consistent with [C.K.'s]
> declaration.

[Id. at 5-6.]

As a preliminary matter, the Court FINDS that the Hearings Officer's conclusion that he lacked subject matter jurisdiction over Plaintiffs' RIH is not entitled to deference because the Hearings Officer did not thoroughly and carefully consider whether he had jurisdiction over each claim in the RIH. See L.M., 556 F.3d at 908 (citation omitted).

The Hearings Officer cited Haw. Admin. R. § 8-60-61(a)(1) and concluded that Plaintiffs failed to meet the provision's requirements because, at the time Plaintiffs filed their RIH, the IEP team had yet to render a decision whether R.P.-K. would continue to receive services beyond the 2009-2010 school year. [Admin. Dismissal Order at 6.] The Hearings Officer, however, failed to consider: whether the IEP team's failure to render a decision on C.K.'s repeated requests for services for R.P.-K. beyond the 2009-2010 school year did not "relat[e] to . . . the provision of a FAPE to the student[;]" § 8-60-61(a)(1); or whether the IEP team's failure to render an official decision was effectively a decision to deny services, depriving R.P.-K. of a FAPE in violation of the IDEA, see 20 U.S.C. § 1415(f)(3)(E)(ii).[15]

---

[15] Section 1415(f)(3)(E)(ii) states, in pertinent part:
        In matters alleging a procedural violation,
        a hearing officer may find that a child did not
        receive a free appropriate public education only
                                        (continued...)

The RIH asserts that "[Defendant] and its representatives failed to provide a FAPE in violation of the IDEA by refusing to continue special education and related services until [R.P.-K.'s] 22nd birthday." [RIH at 2.] Plaintiffs listed the following bases in support of this claim:

> A. [R.P.-K.'s] mother, [C.K.], has repeatedly requested that [Defendant] continue to provide [R.P.-K.] with special education and related services until his 22nd birthday. Although [Defendant] acknowledges that [R.P.-K.] continues to need special education and related services, it has denied the request in violation of the IDEA.
>
> B. [Defendant's] refusal to continue to provide a FAPE to [R.P.-K.] while allowing non-disabled students over the age of 20 to pursue a CB or GED violates the IDEA.
>
> C. [Defendant] is estopped from arguing that it can refuse to provide a FAPE to [R.P.-K.] when in its application for IDEA, Part B funding, it represented that a FAPE is provided to all students with disabilities between the ages of 3 and 21 inclusive.

[Id.[16]]

---

[15](...continued)
        if the procedural inadequacies--
                (I) impeded the child's right to a free appropriate public education; [or]
                (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child[.]

[16] In the RIH's "FACTUAL BACKGROUND" section, which "[a]pplies to all sections" of the RIH, Plaintiffs further explain: "At an IEP team meeting held April 28, 2010, and again
                                                            (continued...)

**I.  C.K.'s Requests for Continued Services for R.P.-K.**

The first argument in Plaintiff's RIH was that Defendant's failure to respond to C.K.'s requests for special education and related services for R.P.-K. beyond the 2009-2010 school year effectively constituted a denial of such requests. The Record on Appeal indicates that Defendant was providing R.P.-K. with special education and related services when Plaintiffs filed their RIH on June 29, 2010.[17]  The IEP team, however, failed to make a decision with respect to C.K.'s request for special education and related services beyond the 2009-2010 school year and extended school year.  In other words, the IEP team's inaction left R.P.-K. without an education or transition plan beyond the end of the 2009-2010 extended school year, which was approximately one month away at the time Plaintiffs filed the

_____

[16](...continued)
on May 13, 2010, [R.P.-K.'s] mother requested that [R.P.-K.] be allowed to continue his education beyond the age of 20. [Defendant] refused the request."  [RIH at 1.]

[17] According to the 4/28/10 IEP, R.P.-K.'s IEP team assigned him special education and related services, including extended school year, from January 13, 2010 to January 13, 2011.  [4/28/10 IEP at 16.]  Although the 4/28/10 IEP indicates that C.K. received a copy of the IEP at no cost, [id. at 1,] C.K. claims that she did not receive the 4/28/10 IEP until the conclusion of the July 26, 2010 IEP team meeting, [C.K. Decl. at ¶ 6]. Defendant did not present any further evidence of when Plaintiffs received the 4/28/10 IEP.  The precise date that Plaintiffs received the 4/28/10 IEP, however, is not critical to this Court's analysis.

RIH.[18]  The delay also arguably could have infringed on C.K.'s

right to effectively participate in formulating her child's IEP,

which can constitute grounds for a denial of FAPE.  <u>See</u>

§ 1415(f)(3)(E)(ii).

At the hearing, Plaintiffs' counsel argued that the IEP

team's inaction was a deliberate attempt to postpone the decision

until after the anticipated enactment of Act 163.  Defendant's

counsel responded that the IEP team's delay in responding to

C.K.'s requests was due to the need to collect more information

about R.P.-K.  Both the 5/11/10 PWN and the 5/21/10 PWN state

that Defendant was going to "continue to gather data on IEP goals

and objectives[.]"  [5/11/10 PWN at 1; 5/21/11 PWN at 1.]  The

data in question appears to relate to R.P.-K.'s transition to a

post-secondary school setting.  Specifically, the 5/21/11 PWN

states that Defendant "offered to discrepancy (sic) analysis

during [the extended school year] to identifying specific skills

_____

[18] Neither of the parties provided the Court with the
official start and end dates of the 2009-2010 or 2010-2011 school
years.  The Court notes that Defendant's 2010-2011 Official
School Calendar ("2010-2011 Calendar"), which is published on its
website, indicates that the 2010-2011 school year commenced on
August 2, 2010.  2010-2011 Calendar, modified 6/10/10, available
online at http://doe.k12.hi.us/calendars1011/SY2010-11%20Student%
20Calendar.PDF (last visited July 29, 2011).  This is consistent
with this district court's prior decisions noting that the
Hawai`i public schools typically begin their school year at the
end of July or in early August.  <u>See, e.g.</u>, <u>Marc M. ex rel. Aidan
M. v. Dep't of Educ., Hawaii</u>,  762 F. Supp. 2d 1235, 1245 n.3 (D.
Hawai`i 2011) (citations omitted) (noting that the 2009-2010
school year started on July 26, 2009).

necessary for success in the post secondary setting. [Defendant] is still awaiting parent's choice for a post secondary placement." [5/21/11 PWN at 1.] Further, in explaining why the team "rejected"[19] the option of continued placement and services at Castle, the 5/21/11 PWN states that Defendant "offered to do transition type activities during [the extended school year] to assist team in identifying specific skills necessary for success in the post secondary setting." [Id.]

Thus, the Court FINDS that the first argument in Plaintiffs' RIH – that Defendant's failure to respond to C.K.'s requests for special education and related services for R.P.-K. beyond the 2009-2010 extended school year constituted an effective denial of such requests – clearly implicates the provision of FAPE to R.P.-K. This argument was the proper subject of a due process complaint pursuant to Haw. Admin. R. § 8-60-61(a)(2). The Court therefore FINDS that the Hearings Officer erred in ruling that he did not have jurisdiction over this portion of Plaintiffs' RIH.

The Court emphasizes that it expresses no opinion on the merits of this claim. Even if the Hearings Officer finds that the IEP team's failure to render a decision on Plaintiffs'

---

[19] This answer is in response to a form inquiry: "Reasons these options were rejected". [5/21/11 PWN at 1.] The parties agree that, at the time, there was no official decision on Plaintiffs' request for continued placement and services at Castle beyond the 2009-2010 school year and extended school year.

22

request for services beyond the 2009-2010 school year and
extended school year constituted a decision to deny services, the
Hearings Officer could, for example, find that this decision was
not a denial of FAPE because the IEP team was justified in
seeking more data about R.P.-K's post-secondary plans, including
C.K.'s choice for R.P.-K.'s post-secondary placement.  [5/21/11
PWN at 1.]  Further, the 5/21/11 PWN expressly states that
Defendant "will reconvene to discuss collected data and results
of discrepancy analysis **before the beginning of the 2010-2011
school year**."  [Id. (emphasis added).]  At the present time, this
Court finds only that the Hearings Officer should have considered
the merits of Plaintiffs' claim that the IEP team's failure to
render a decision on Plaintiffs' request for continued placement
and services beyond the 2009-2010 school year and extended school
year constituted a denial of the request and deprived R.P.-K. of
a FAPE in violation of the IDEA.  The Court therefore REVERSES
the Administrative Dismissal Order, to the extent that the
Hearings Officer ruled that he did not have subject matter
jurisdiction over that portion of Plaintiffs' RIH.  The Court
REMANDS this case to the Hearings Officer to consider this issue.

        Similarly, the Court also REVERSES the Administrative
Dismissal Order, to the extent that the Hearings Officer ruled
that he did not have subject matter jurisdiction over the portion
of Plaintiffs' RIH alleging that Defendant is estopped from

arguing that it can refuse to provide R.P.-K. a FAPE because of
its representations in federal funding applications.  The Court
finds that the Hearings Officer would have jurisdiction over the
estoppel issue, if the Hearings Officer determines that it is
relevant to Plaintiffs' claim that the IEP team's failure to
render a decision on Plaintiffs' request for continued placement
and services constituted a denial of the request and a
deprivation of a FAPE in violation of the IDEA.  Again, the Court
emphasizes that it expresses no opinion on the merits of
Plaintiffs' estoppel argument.  The Court REMANDS this case to
the Hearings Officer to consider, first, whether the estoppel
argument is relevant to Plaintiffs' FAPE claim, and, if it is
relevant, the merits of the estoppel argument.

**II.  <u>Education Comparable to Adult Education Programs</u>**

The second argument in Plaintiffs' RIH is that
Defendant's "refusal to continue to provide a FAPE to [R.P.-K.]
while allowing non-disabled students over the age of 20 to pursue
a CB or GED violates the IDEA."  [RIH at 2.]  The Court construes
this argument as a challenge to Act 163.  Plaintiffs contend that
denying IDEA services to disabled students ages twenty and
twenty-one is discriminatory because non-disabled students are
able to participate in adult education programs while disabled
students cannot meaningfully participate in such programs because
Defendant does not provide special education and related services

24

in those programs.

The legislature expressly provided that Act 163 would take effect on July 1, 2010 and made no provision for retroactive application. 2010 Haw. Sess. Laws Act 163, § 3 at 377. Haw. Rev. Stat. § 1-3 states: "No law has any retrospective operation, unless otherwise expressed or obviously intended."

Plaintiffs, however, filed their RIH on June 29, 2010, and the RIH addressed the results of April 28, 2010 and May 13, 2010 IEP meetings. The Record on Appeal also contains R.P.-K.'s 4/28/10 IEP, although it does not contain the 5/13/10 IEP. It is well-settled that "an IEP must take into account what was, and what was not, objectively reasonable . . . at the time the IEP was drafted." J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 439 (9th Cir. 2010) (citation and block quote format omitted). Further, as a general rule, administrative review of IDEA cases is specifically limited to the issues raised in the administrative complaint. Cnty. of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1465 (9th Cir. 1996) ("The scope of the administrative hearing mandated by [former] section 1415(b)(2)[20] is limited to the 'complaint' raised to obtain the hearing."). Section 1415(f)(3)(B) codified this holding, providing that "[t]he party

---

[20] The current section governing the subject matter of due process hearings is 20 U.S.C. § 1415(f)(3)(B).

requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7), unless the other party agrees otherwise."

Considering these two well-established principles together, even assuming *arguendo* that the second argument in the RIH contends that the expected application of Act 163 denied R.P.-K. a FAPE, the Hearings Officer did not have jurisdiction to consider this issue. Act 163 was not in effect at the time of the 4/28/11 IEP, nor was it in effect at the time Plaintiffs filed their RIH. The Court is unaware of any evidence, moreover, that Defendant has consented to allowing Plaintiffs to raise challenges to Act 163 in this case. Thus, any argument arising from Act 163, even if couched in terms of the denial of FAPE, was not properly before the Hearings Officer.[21] The Court therefore AFFIRMS the Administrative Dismissal Order, although on other grounds, to the extent that the Hearings Officer ruled that he did not have subject matter jurisdiction over the portion of the RIH challenging Act 163.

---

[21] For the same reasons, this Court rejects Plaintiffs' argument that the OAH had subject matter jurisdiction over issues arising from the 8/6/10 PWN. See, e.g., Reply Br. at 2. The Court has therefore only considered the 8/6/10 PWN for background purposes.

**CONCLUSION**

On the basis of the foregoing, the Hearings Officer's Order Granting Respondent's Motion to Dismiss or in the Alternative for Summary Judgment, filed October 26, 2010, is HEREBY AFFIRMED IN PART AND REVERSED IN PART. The Court AFFIRMS the Administrative Dismissal Order, although on different grounds, to the extent that it dismissed the portion of Plaintiffs' Request for Impartial Hearing challenging Act 163. The Court REVERSES the Administrative Dismissal Order to the extent that it dismissed: Plaintiffs' claim that Defendant's failure to render a decision prior to the filing of the RIH on Plaintiffs' request for continued placement and services beyond the 2009-2010 school year and extended school year constituted a denial of FAPE; and Plaintiffs' estoppel argument. The Court HEREBY REMANDS this case to the Hearings Officer to consider these issues.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 1, 2011.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**R.P.-K., ET AL. V. DEPARTMENT OF EDUCATION, ET AL.; CIVIL NO. 10-00644 LEK-KSC; ORDER AFFIRMING IN PART AND REVERSING AND REMANDING IN PART THE HEARINGS OFFICER'S OCTOBER 26, 2010 ORDER**